# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE DIVISION

PHILIP BERTRAND                               CIVIL ACTION NO. 6:10-cv-1257

VERSUS                                        MAGISTRATE JUDGE HILL

TALEN'S MARINE & FUEL LLC          BY CONSENT OF THE PARTIES

### FINDINGS  OF  FACT,  CONCLUSIONS  OF  LAW, AND  ORDER

Pending before this Court is the Joint Motion for Entry of Declaratory Judgment filed by plaintiff, Philip Bertrand, and defendants, Talen's Marine & Fuel, L.L.C. ("Talen's"), Seabright Insurance Company, and New York Marine and General Insurance Company, on January 27, 2012.  [rec. doc. 46].  On May 1, 2012, the Court held a hearing on the motion, at which time I ordered plaintiff to submit Proposed Findings of Fact and Conclusions of Law and took this matter under advisement.  [rec. doc. 52].  On May 14, 2012, plaintiff submitted Proposed Findings of Fact and Conclusions of Law.  [rec. doc. 54].  By letter dated May 16, 2012, Talen's advised the Court that it had no objections to the Proposed Findings of Fact and Conclusions of Law filed by plaintiff.

## **Procedural Background**

On January 6, 2012, the Court held a settlement conference, and a settlement of the parties' claims was negotiated.  [rec. doc. 41].  On January 9, 2012, a 60-Day Order of Dismissal was entered without prejudice to the right to reopen the action if the settlement was not consummated, and the Court retained jurisdiction until such time as compliance with the Order had been fulfilled.  [rec. doc. 40].  The plaintiff's settlement with defendants was conditioned upon approval of a Medicare set-aside ("MSA") by the Centers for Medicare and Medicaid Services ("CMS").

On January 11, 2012, the parties consented to trying the Medicare set-aside issue to the undersigned.  [rec. doc. 42].  By Order of Reference dated January 12, 2012, Judge Doherty referred the Medicare set-aside issue to the undersigned.  [rec. doc. 44].

On January 27, 2012, the parties filed a motion for declaratory judgment seeking: (1) approval of the settlement, (2) a declaration that the interests of Medicare are adequately protected by setting aside a sum of money determined by the Court to fund any of Bertrand's future medical expenses related to the injuries claimed and released in this lawsuit, and (3) an order setting that amount aside

from the settlement proceeds and depositing it into an interest-bearing account to be self-administered by Bertrand.  [rec. doc. 46].

The Court set the matter for an evidentiary hearing and directed the Clerk of Court to send a copy of the Order to the United States of America through the U.S. Attorney's Office in Lafayette, Louisiana.  [rec. doc. 51].  By letter dated April 30, 2012, from the United States Attorney, the Court was advised that the Centers for Medicare & Medicaid Services ("CMS") would not participate in the hearing. Pertinent portions of the letter, a copy of which was entered into the record as Exhibit P3, read as follows:

> [T]he Centers for Medicare & Medicaid Services (CMS) does not review or verify counsel's determination of whether or not there is a recovery for future medical services or the determination of the amount to be held to protect the Medicare Trust Fund except under limited circumstances.  Based on the limited information available in the complaint and relevant pleadings, CMS would neither participate nor review the parties' determination of whether a set aside was needed or the amount of the set-aside with respect to the liability settlement.

At the hearing, the Court received into evidence the Liability Medicare Set-Aside Report prepared by Sharon Risinger, RN CRRN CCM CLCP MSCC,  of MedAllocators, Inc. [Exhibit P1].   Attached to the MSA report were medical records from Bertrand's treating physicians, Dr. Gregory Rubino, Dr. Kevin

Schlamp, Dr. Brett Cascio, and Dr. Sreelatha Pulakhandam.  The Court also received a copy of the Affidavit of Sharon Risinger [Exhibit P2], a fax copy of correspondence from the U.S. Department of Justice dated 4/30/2012 [Exhibit P3], and MyMedicare.gov Search Results [Exhibit P4].

On May 14, 2012, the Court received Proposed Findings of Fact and Conclusions of Law from Bertrand.  [rec. doc. 54].   By letter dated May 16, 2012, Talens advised the Court that it had no objections to the proposed findings of fact and conclusions of law filed by plaintiff's counsel.

From the pleadings, the evidence and stipulations of the parties, the Court makes the following:

## FINDINGS  OF  FACT

1.   Bertrand was injured in a workplace accident in December, 2007.  At that time, he was employed with Talen's as a captain on a tow boat.  Bertrand sustained a low back injury when a bathroom medicine cabinet fell off of the wall, and he twisted his back when he tried to catch the cabinet.

2.   As a result of the accident, Bertrand underwent a L4-5 interbody fusion on October 28, 2010, by Dr. Gregory Rubino.  Bertrand had a second lumbar surgery on April 11, 2011.

3.      Due to increased low back pain, Bertrand fell in June, 2011, injuring his

right shoulder.  Bertrand was seen by Dr. Brett Cascio, who diagnosed a

labrum tear and recommended orthoscopic surgery.  Bertrand did not have

surgery, instead undergoing physical therapy and cortisone injections.

4.      As of January, 2012, the only medication Bertrand was prescribed was

Endocet for pain.  Bertrand's treating physician opined that Bertrand would

require this medication for his lifetime.

5.      Bertrand filed suit on August 10, 2010, seeking to recover for the damages

he allegedly sustained as a result of the accident in December, 2007.

Liability and damages were vigorously contested by Talen's, Seabright

Insurance Company ("Seabright"), and New York Marine and General

Insurance Company ("New York Marine").

6.      Subsequent to a settlement conference with this Court, Bertrand's claims

against defendants settled on January 6, 2012.  [rec. doc. 41].

7.      Recognizing that an MSA might be appropriate to protect the interests of

Medicare under the MSP Act under the facts and circumstances in this

matter, Bertrand enlisted the services of the James Street Group and

MedAllocators to prepare an MSA.

8.    Various medical information primarily from Bertrand's treating physicians was accumulated and an MSA was prepared by Sharon Risinger ("Risinger") of MedAllocators.

9.    Based on the January 13, 2012, Liability MSA Report prepared by Risinger, Bertrand's future potential medical expenses that would be covered by Medicare and are related to the injuries claimed in this lawsuit amount to $64,866.88.

10.   CMS does not currently require or approve Medicare set-asides when personal injury lawsuits are settled.  CMS does not currently have a policy or procedure in effect for reviewing or providing an opinion regarding the adequacy of the future medical aspect of a liability settlement or recovery of future medical expenses incurred in liability cases.

11.   Bertrand was born in 1960, and he will not obtain the age of 65 within 30 months of the date of settlement.

12.   The Court finds the estimate of future medical costs, as set forth in the MSA, to be both reasonable and reliable.

13.   Based on the information provided by Bertrand's treating physicians and the opinion of MedAllocators, Bertrand can anticipate $64,867.00 in future Medicare-covered items or services related to this acident.  This includes a

seed amount of $11,677.00 (two years annual cost including one cortisone injection and one right shoulder arthroscopic surgery) to be followed by annual deposits of $1,971.00 for the remainder of Bertrand's life expectancy.  The Court finds that this amount adequately protects Medicare's interests and should be available to provide funding for future medical items or services related to what was claimed and released in this lawsuit that would otherwise be covered or reimbursable by Medicare.

14.    Bertrand is aware of his obligation to reimburse Medicare for all conditional payments made by Medicare for any medical expenses he incurred that were related to the injuries claimed in this lawsuit.  Although provided with notice of the hearing, HHS opted not to participate and provided no notice of any conditional payments for which it intended to seek reimbursement. Therefore, the Court finds that there is no evidence of any conditional payments made by Medicare before the time of the settlement.

15.    There is no evidence that Bertrand, his attorneys, any other party or any other party's representative, is attempting to maximize other aspects of the settlement to Medicare's detriment.

Based upon the foregoing findings of fact, the undersigned makes the following:

## CONCLUSIONS OF LAW

1.    Jurisdiction over the underlying litigation is based on diversity jurisdiction, 28 U.S.C. § 1332.

2.    Medicare may obtain secondary payer status under the MSP if payment has been made, or can reasonably be expected to be made, under a workers' compensation law of a state or under an automobile or liability insurance policy, both of which are defined in the statute as a "primary plan."  42 U.S.C. § 1395y(b)(2)(A)(ii).  A primary plan's responsibility for payment can be determined by judgment or settlement.  42 U.S.C. § 1395y(b)(2)(B)(ii), 42 C.F.R. § 411.22(b)(1-3).

3.    By virtue of the terms and obligations in the settlement of the parties' claims and plaintiff's receipt of the settlement funds in conjunction therewith, Bertrand will become an "entity who received payment from a primary plan," and is therefore responsible as a primary payer for future medical items or services that would otherwise be covered by Medicare, which are related to what was claimed and released in this lawsuit, in the amount of $64,866.88.  To the extent there are items or services incurred by Bertrand in the future that would otherwise be covered or reimbursable by Medicare, that are related to what was claimed and released in this lawsuit, Medicare

-8-

shall not be billed for those items or services until the funds received by

Bertrand for that purpose through the settlement are exhausted.

4.   Bertrand is obligated to reimburse Medicare for all conditional payments

made by Medicare prior to the time of the settlement and for all medical

expenses submitted to Medicare prior to the date of this order, even if such

conditional payments are asserted by Medicare subsequent to the effective

date of this order.

5.   The sum of $64,866.88, to be utilized by Bertrand out of the settlement

proceeds to pay for future medical items or services that would be otherwise

covered by Medicare, reasonably and fairly takes Medicare's interests into

account in that the figures are based on reasonably foreseeable medical needs

(as opposed to the standard of proof required by the substantive law that

would be applicable if the case were tried on the merits), based on the most

recent information from the treating physicians and on the January 13, 2012

Liability MSA Report.

6.   Since CMS provides no other procedure by which to determine the adequacy

of protecting Medicare's interests for future medical needs and/or expenses

in conjunction with the settlement of third-party claims, and since there is a

strong public interest in resolving lawsuits through settlement,[1] the Court

finds that Medicare's interests have been adequately protected in this

settlement within the meaning of the MSP.

Based upon the foregoing conclusions of law, the Court makes the following

order:

**IT IS HEREBY ORDERED** that:

The parties' motion for declaratory judgment [rec. doc. 46] is **GRANTED**

**IN PART AND DENIED IN PART**.  More particularly:

1.   To the extent that Bertrand receives confirmation from Medicare of

     any conditional payments made by Medicare for services provided

     prior to the date of this order, Bertrand shall promptly reimburse

     Medicare for such conditional payments.

2.   Bertrand shall provide funding for $64,866.88 out of the settlement

     proceeds for payment of future medical items or services, which would

     otherwise be covered or reimbursable by Medicare, related to what

     was claimed and released in this lawsuit.

3.   The funding for Bertrand's future medical expenses shall be deposited

     into an interest bearing account, which will be self-administered by

---

[1]      *McDermott, Inc. v. AmClyde,* 511 U.S. 202, 215 (1994).

Bertrand, for the purpose of paying any future medical items or

services that would otherwise be covered or reimbursable by Medicare

that are related to what was claimed and released in this lawsuit.

4.      All other requested relief is **DENIED**.

Signed at Lafayette, Louisiana, June 4, 2012.


_C. Michael Hill_
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE